UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

**CLIFFORD ABSHIRE III**            DOCKET NO. 15-CV-2470; SEC. P
**(DOC.#439164)**

**VERSUS**            JUDGE DRELL

**CORRECTIONS CORPORATION OF**      MAGISTRATE JUDGE PEREZ-MONTES
**AMERICA**

### REPORT AND RECOMMENDATION

Pro se Plaintiff, Clifford Abshire III, proceeding in forma pauperis, filed the instant civil rights complaint pursuant to 42 U.S.C. §1983 on October 2, 2015 [Doc. #1], and amended complaint [Doc. #5] on November 5, 2015. He was granted leave to proceed in forma pauperis on November 10, 2015. [Doc. #8] Plaintiff is an inmate in the custody of Louisiana's Department of Public Safety and Corrections ("LDOC"), and he is incarcerated at the Winn Correctional Center ("WNC") in Winnfield, Louisiana. He raises numerous constitutional claims against various defendants.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

### *Factual Allegations*

Plaintiff alleges that on January 10, 2015, he was called for mail call and was given an opened, empty envelope from the "Law Firm of Shein and Brandenburg." He does not state whether the Georgia law firm actually represents him, or if so, regarding what matter. The envelope had been inspected by Defendant Anderson.

On January 17, 2015, Plaintiff filed a grievance regarding his opened "legal mail." Plaintiff alleges that on February 6, 2015, Defendant Smiley called Plaintiff to the "Count Room." Plaintiff was told that if he did not follow through with the grievance, he could return to his previous prison job of "Offender Counsel Substitute." [Doc. #5, p.6]

On February 8, 2015, Plaintiff submitted an inmate request form to Defendant Walker regarding the agreement between Plaintiff and Smiley. Plaintiff received no response.

On February 17, 2015, Plaintiff sent another inmate request form to Defendant Bludworth. Plaintiff received a reply on February 28, 2015, stating that, because of a disciplinary conviction, Plaintiff would not be assigned his former substitute counsel job. [Doc. #5, p.9]

Plaintiff alleges that, on the afternoon of February 17, 2015, the facility was placed on lock-down due to an escape. Plaintiff attempted to "toss" a grievance form to a case manager. The case manager asked Defendant Cole to pick up the envelope that Plaintiff had tossed. Cole approached the bars asking which inmate had thrown the envelope. A verbal altercation ensued between Plaintiff and Defendant Cole, with Cole making derogatory comments regarding Plaintiff's sexuality. [Doc. #5, p.6-7] After the verbal altercation, Plaintiff asked Owens to file a notice of violation of the Prison Rape Elimination Act (PREA) against Defendant Cole.

Plaintiff also asked for a grievance form, which he submitted. [Doc. #5, p.7]

On February 18, 2015, Plaintiff was served with two disciplinary reports for inciting a riot, threatening an officer, participating in an argument, and using profanity. [Doc. #5, p.7] On February 24, 2015, a disciplinary panel conducted a hearing, and the matter was deferred. Plaintiff alleges that, on February 26, 2015, Defendant Cole admitted to initiating the altercation, and Cole was reprimanded. [Doc. #5, p.7-8] Nonetheless, Plaintiff was found guilty and sentenced to restricted housing and loss of twelve weeks of canteen privileges, all suspended. Plaintiff appealed, and the appeal was denied. [Doc. #5, p.8, 9] He sought relief at the next level. While Plaintiff's appeal was pending, he was terminated from the prison garment factory, and was moved to another unit within the facility. [Doc. #5, p.9]

On May 8, 2015, a facility "shake-down" was conducted. Plaintiff's "altered" headphones, which had been loaned to another inmate, were confiscated. Plaintiff received a disciplinary report as owner of the altered headphones. On May 21, 2015, Plaintiff was convicted of the violation, placed in restricted housing, and had his recreation privileges restricted. [Doc. #5, p.10] As of November 5, 2015, his appeal was still pending with the Department of Corrections. [Doc. #5, p.12] Plaintiff also complains that three of his legal books were destroyed in the shakedown. [Doc. #5, p.13]

Plaintiff complains that, for the week he was in the special housing unit, he was not provided with towels or hygiene items and had to borrow some items from a homosexual inmate. [Doc. #5, p.11] He also complains that, during that week, he could not climb into the assigned upper bunk because of his "duty status" so he had to sleep on a mattress on the floor. [Doc. #5, p.11]

Plaintiff was charged with another disciplinary violation, resulting in a six week store and six week canteen restriction. [Doc. #5, p.12]

Plaintiff complains that a decision had been made as to one of his grievances on June 8, 2015, but he did not receive a copy or learn about it until September 2015. Thus he complains that he was deprived of his right to proceed to the next step of the grievance process. [Doc. #5, p.13]

Plaintiff claims that he was subjected to cruel and unusual punishment, denied access to the courts, suffered retaliation, and that his First Amendment right was violated through the opening of his mail. He states that the actions of Defendant Cole violated the provisions of the Prison Rape Elimination Act; Defendant Smiley violated Plaintiff's rights under the Eighth Amendment by his gross negligence in failing to investigate Plaintiff's complaint against Cole and allowing three of Plaintiff's books to be destroyed; Defendant Horne failed to investigate Plaintiff's claim of retaliation; Defendants Morgan and Bludworth allowed Plaintiff to

be convicted of false disciplinary reports, which led to his placement in segregation; Defendant Walker violated Plaintiff's rights by taking Plaintiff's prison job; Heyse failed to properly perform her duties with regard to the grievance process; and CCA failed to curb the actions of the aforementioned defendants.

### Law and Analysis

1. Opened Mail

Plaintiff alleges that on January 10, 2015, he was called for mail call and was given an opened, empty envelope from the law firm of Shein and Brandenburg. The envelope had been inspected by Defendant Anderson. To the extent that Plaintiff complains that Anderson violated his right of access to the courts, his claim fails. He has not alleged that he suffered an actual injury in any non-frivolous litigation as a result of the defendant's alleged unconstitutional conduct. See Ruiz v. United States, 160 F.3d 273, 275 (5th Cir. 1998); Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999). Additionally, to the extent that Plaintiff claims that he should have been present when his mail was opened, his claim also fails. See Brewer v. Wilkinson, 3 F.3d 816, 825 (5th Cir. 1993).

2. Prison Job

Plaintiff's complaint that he was not returned to his previous prison job is frivolous. An inmate's expectation of obtaining or keeping a specific prison job, or any job, does not implicate a

protected property interest. See <u>Bulger v. U.S. Bureau of Prisons</u>, 65 F.3d 48, 50 (5th Cir. 1995). Moreover, Plaintiff states that it was because of a disciplinary conviction that Plaintiff was not returned to his prior prison job. [Doc. #5, p.9]

3. Verbal abuse

Plaintiff's claim regarding verbal abuse fails as verbal abuse or threats, without more, do not support a claim of a constitutional violation. See <u>Siglar v. Hightower</u>, 112 F.3d 191, 193 (5th Cir. 1997); <u>McFadden v. Lucas</u>, 713 F.2d 143, 146 (5th Cir. 1983).

4. Due process

Plaintiff complains that he was convicted of a disciplinary violation in February 2015, for which he was sanctioned to restricted housing and loss of twelve weeks of canteen privileges, all suspended. In May 2015, Plaintiff was convicted of another disciplinary violation resulting in temporary placement in restricted housing and restriction of recreation privileges. [Doc. #5, p.10] Plaintiff was convicted of another disciplinary violation in June 2015, resulting in a six week store and six week canteen restriction. [Doc. #5, p.12]

To the extent that Plaintiff seeks to raise a due process claim regarding any of his disciplinary convictions, his claim is without merit. Absent a loss of good time or other atypical punishment, a prisoner does not have a basis for a federal lawsuit

concerning a disciplinary action. See Sandin v. Conner, 515 U.S. 472, 486 (1995); see also Malchi v. Thaler, 211 F.3d 953, 958 (5th Cir. 2000) (holding that a "30-day loss of commissary privileges and cell restriction do not implicate due process concerns").

5. Lost property

Plaintiff complains that three of his legal books were destroyed in the shakedown. [Doc. #5, p.13] The Due Process Clause of the Fourteenth Amendment provides "nor shall any State deprive any person of ... property, without due process of law." U.S. Constitution, Amendment XIV. However, under the Parratt/Hudson doctrine, a state actor's random and unauthorized deprivation of a plaintiff's property does not result in a violation of procedural due process rights if the state provides an adequate post-deprivation remedy. See Parratt v. Taylor, 451 U.S. 527, 544 (1981); Hudson v. Palmer, 468 U.S. 517 (1984). Even in instances where an intentional deprivation occurs, if an adequate state post-deprivation remedy is available, the Due Process Clause is not implicated. See Hudson v. Palmer, 468 U.S. 517 (1984).

Louisiana law provides Plaintiff the opportunity to seek redress for either the negligence of prison officials or an intentional tort committed by other inmates. La. Civil Code, Article 2315. This provision of state law, which is the general tort provision of Louisiana's Civil Code, provides all the process that is required, and thus, the Fourteenth Amendment is not

implicated. See Charbonnet v. Lee, 951 F.2d 638 (5th Cir.), *cert. denied*, 505 U.S. 1205 (1992). Plaintiff's claim regarding lost property is clearly barred by the Parratt/Hudson doctrine.

6. Conditions of Confinement

Plaintiff complains that, for the week he was in the special housing unit, he was not provided with towels or hygiene items and had to borrow some items from an inmate. [Doc. #5, p.11] He also complains that, during that week, he could not climb into the assigned upper bunk because of his "duty status," so he had to sleep on a mattress on the floor. [Doc. #5, p.11]

The Eighth Amendment does not mandate comfortable prisons; however, it does not permit inhumane ones. See Harper v. Showers, 174 F.3d 716, 719 (5th Cir. 1999). Therefore, the conditions under which a prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits the unnecessary and wanton infliction of pain. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Federal courts employ a two-part test to determine whether a prisoner has established an Eighth Amendment violation. See Harper, 174 F.3d at 719. First, there is an objective requirement to demonstrate conditions "so serious as to deprive prisoners of the minimal measure of life's necessities," as when the prisoner is denied "some basic human need." Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995); Farmer v. Brennan, 511 U.S. 825, 834 (1994). Second, under a subjective standard, it must be shown

that the responsible prison officials acted with deliberate indifference to the prisoner's conditions of confinement. See Woods, 51 F.3d at 581. "The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment." Farmer, 511 U.S. at 834, 114 S.Ct. 1970 (internal quotation marks and citations omitted) (emphasis added).

For conditions of confinement to rise to the level of an Eighth Amendment violation, they must be "cruel and unusual" under contemporary standards. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. Id. However, when the restrictions of confinement rise to a level that results in physical torture, it can result in pain without penological purpose constituting cruel and unusual punishment under the Eighth Amendment. Id.; Bradley v. Puckett, 157 F.3d 1022, 1025 (5th Cir. 1998). Thus, while the denial of basic hygiene for a period in excess of two months resulting in the prisoner's contraction of a fungal infection might constitute cruel and unusual punishment, Bradley, supra, a week-long deprivation of hygiene items and sleeping on a mattress on the floor, inconvenient as it may have been, does not rise to the level of cruel and unusual punishment. See also Hamilton v. Lyons, 74 F.3d 99, 106-07 (5th Cir. 1996)(no constitutional

violation where inmate was denied sheets and showers -among other things- for a three-day period).

Moreover, Plaintiff has not alleged a physical injury resulting from the conditions of confinement. Thus the alleged deprivation cannot rationally be equated to cruel and unusual punishment since the deprivation was not so extreme as to "... rise to a level that results in physical torture ..." Bradley v. Puckett, 157 F.3d at 1025.

7.  Right to Grievance

Plaintiff complains that a decision had been made as to one of his grievances on June 8, 2015, but he did not receive a copy or learn about it until September 2015. Thus, he complains that he was deprived of his right to proceed to the next step of the grievance process. [Doc. #5, p.13] He also complains about various defendants failing to investigate his complaints.

First, an inmate has no constitutional right to a grievance procedure and has no due process liberty interest in having his grievance resolved to his satisfaction. See Geiger v. Jowers, 404 F.3d 371, 374-75 (5th Cir. 2005). Additionally, the mere failure of a prison official to follow the prison's own regulation or policy does not amount to a constitutional violation. See Hernandez v. Estelle, 788 F.2d 1154, 1158 (5th Cir. 1986). Finally, the regulations provide that the expiration of response time limits shall entitle the offender to move on to the next step in the

process. See 22 La. Admin. Code Pt I, 325. Thus, when Plaintiff did not receive a response to his grievance, he was entitled to move to the next step.

8.  Gross Negligence

Plaintiff alleges that Defendant Smiley violated Plaintiff's rights under the Eighth Amendment by his gross negligence in failing to investigate Plaintiff's complaint against Defendant Cole. However, deliberate indifference cannot be inferred merely from negligence or gross negligence. See City of Canton v. Harris, 489 U.S. 378, 388 (1989).

9.  Corrections Corporation of America

Plaintiff alleges that CCA is liable for failing to curb the actions of the aforementioned defendants. First, Plaintiff has failed to state a claim of a constitutional deprivation by the defendants. Even if he had, CCA, a private corporation is not vicariously liable under §1983 for its employees' deprivations of others' civil rights. See Rosborough v. Mgmt. & Training Corp., 350 F.3d 459, 461 (5th Cir. 2003).

10. Prison Rape Elimination Act

Plaintiff complains that Defendant Cole violated the provisions of the Prison Rape Elimination Act (PREA). The courts have held that nothing in the Prison Rape Elimination Act suggests that Congress intended to create a private right of action for inmates to sue prison officials for noncompliance with the Act. See

Johnson v. Rupert, No. 6:11-CV-446, 2014 WL 6969202, at *5 (E.D. Tex. Dec. 9, 2014); De'lonta v. Clarke, No 7:11-cv-483, 2012 WL 4458648 (W.D.Va., September 11, 2012) (collecting cases), aff'd 548 Fed.Appx. 938 (4th Cir., December 23, 2013). Rather, the Act was intended to address the problem of rape in prison, authorize grant money, and create a commission to study the issue; it does not give prisoners any specific rights. See Chinnici v. Edwards, No. 1:07-cv-229, 2008 WL 3851294 (D.Vt., August 13, 2008).

*Conclusion*

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff's complaint be **DENIED** and **DISMISSED WITH PREJUDICE** under 28 U.S.C. §1915(e)(2)(B) and 1915A.

*Objections*

**Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b), the parties have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs or responses (such as supplemental objections, reply briefs etc.) may be filed. Providing a courtesy copy of the objection to the magistrate judge is neither required nor encouraged. Timely objections will be considered by the district judge before he makes his final ruling.**

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) CALENDAR DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT UPON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE TO WHICH THE PARTY DID NOT OBJECT.**

**THUS DONE AND SIGNED** at Alexandria, Louisiana, this 21st day of December, 2015.

Hon. Joseph H.L. Perez-Montes
United States Magistrate Judge